Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PABLO JAVIER RIVERA, LLC<br><br>**Parte recurrente**<br><br>v.<br><br>NEGOCIADO DE IMPUESTO AL CONSUMO<br><br>**Parte recurrida** | **TA2026RA00174** | **REVISIÓN ADMINISTRATIVA**<br>Procedente de la Oficina de Apelaciones Administrativas Departamento de Hacienda<br><br>Caso Núm.:<br>**S2024-NMA-0565**<br><br>Sobre:<br>Violaciones y Multas Secciones 3050.03, 6043.03 y 6043.01 del Código |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de mayo de 2026.

Comparece ante nos Pablo Javier Rivera, LLC, en adelante, PJR LLC o recurrente, y nos solicita que revisemos la *Resolución* emitida y notificada el 16 de marzo de 2026 por la Oficina de Apelaciones Administrativas del Departamento de Hacienda, en adelante, OAADH. En esta, la OAADH confirmó ciertas multas administrativas impuestas por el Negociado de Impuesto al Consumo del Departamento de Hacienda de Puerto Rico, en adelante, Negociado o recurrido, al amparo de las Secciones 3050.03 y 6043.01(a) del *Código de Rentas Internas de Puerto Rico de 2011*, Ley Núm. 1 de 31 de enero de 2011, según enmendada, 13 LPRA sec. 30011 *et seq.*, en adelante, Código de Rentas Internas.

Por los fundamentos antes expuestos, *confirmamos* la *Resolución* recurrida.

## I.

PJR LLC es un comercio debidamente inscrito en el Registro de Comerciantes del Departamento de Hacienda, siendo así un agente retenedor para efectos del Código de Rentas Internas.[1] Este posee varios números de registros de comerciante, entre estos, el NRC: 1200593-0037, correspondiente a una localidad sita en el Local Núm. 126 del Centro Gran Caribe Mall, ubicado en el Municipio de Vega Alta, en adelante, Local 126.[2] En el referido local, el recurrente posee un establecimiento en el cual opera un total de quince (15) máquinas de entretenimiento operadas mediante fichas o monedas.[3]

El 8 de octubre de 2024, el Negociado le notificó a PJR LLC la imposición de tres (3) multas administrativas por infracciones a las Secciones 2050.03, 6043.01(a) y 6043.03(d) del Código de Rentas Internas, equivalentes a la suma de mil quinientos dólares ($1,500.00).[4] Tales multas fueron emitidas como resultado de una inspección realizada por agentes del Negociado en el referido local, de la cual surgió que el recurrente operaba quince (15) máquinas de entretenimiento sin poseer una licencia de establecimiento y sin exhibir el registro de comerciante en un lugar visible al público.[5]

En desacuerdo, el 17 de octubre de 2024, el recurrente presentó una querella ante la OAADH,[6] con el fin de impugnar la procedencia de las multas que le fueron notificadas.[7] En síntesis,

---

[1] SUMAC TA, entrada núm. 1, apéndice 1, pág. 8.
[2] *Íd.*
[3] *Íd.*, apéndice 2, pág. 2; apéndice 5, pág. 2.
[4] *Íd.*, apéndice 1, pág. 7; apéndice 5.
[5] Conforme surge de las notificaciones emitidas, las multas fueron impuestas de la siguiente manera: "Establecimiento o local donde operan cuatro o más máquinas o artefactos de pasatiempo manipulado con monedas o fichas, o mesas de billar a que corresponda la misma – Sección 3050.03 del Código - $500.00"; "6043.01(a) – Dejar de exhibir el original del Certificado de Registro de Comerciante en un lugar visible al público conforme dispone la Sección 4060.02 - $500.00", y; "Sección 6043.03(d) – Por dejar de notificar cambios o enmiendas a la información requerida y otros datos dentro de treinta (30) días a partir del evento en violación a lo dispuesto en la Sección 4060.01(a) - $500.00". *Véase*, SUMAC TA, entrada núm. 1, apéndice 1, págs. 5-7.
[6] Intitulada *Solicitud de Reconsideración de Multa.*
[7] SUMAC TA, entrada núm. 1, apéndice 1.

sostuvo que estas debían dejarse sin efecto, ya que las máquinas que operaba en el Local 126 se trataban de máquinas de juegos de azar en ruta, las cuales debían ser fiscalizadas y reguladas exclusivamente por la Comisión de Juegos, y no por el Departamento de Hacienda. Sin embargo, nada expresó en cuanto a las imputaciones relacionadas al certificado de registro de comerciante.

El 12 de noviembre de 2024, el Negociado presentó su *Contestación a la Querella*.[8] En la misma, alegó que las multas no versaban sobre la operación o la naturaleza de las máquinas en sí, sino sobre la operación del local en donde estas se encontraban. Adujo, además, que las facultades de la Comisión de Juegos no inciden sobre aquellas del Departamento de Hacienda. Asimismo, afirmó que el recurrente no pudo demostrar su cumplimiento con la exhibición compulsoria del certificado del registro de comerciante al momento de la inspección. Por ello, sostuvo la imposición de las multas al amparo de las Secciones 3050.03 y 6043.01(a) del Código de Rentas Internas. No obstante, solicitó que se dejara sin efecto aquella impuesta en virtud de la Sección 6043.03(d) del mismo Código.

Así las cosas, el 20 de mayo de 2025, el Foro Recurrido celebró la vista administrativa ante un oficial examinador designado por el Secretario del Departamento de Hacienda.[9] Sometido el asunto, el 16 de marzo de 2026, la OAADH emitió la *Resolución* recurrida, en la cual consignó las siguientes determinaciones de hechos:

1. La multa fue impuesta por Agentes de Rentas Internas del Negociado, el 8 de octubre de 2024.

2. La multa fue notificada utilizando el modelo 2931, notificando al Querellante una multa administrativa por la cantidad de $1,500.00 por alegadamente haber violado

---

[8] SUMAC TA, entrada núm. 1, apéndice 6.
[9] *Íd.*, apéndice 7.

las Secciones 3050.03, 6043.01(d) y 6043.01(a) del Código.

3. El Negociado dejó sin efecto la multa impuesta bajo la Sección 6043.03(d) del Código.

4. Durante la inspección se intervinieron dos locales operados por la parte querellante dentro del mismo centro comercial.

5. En uno de los locales los agentes observaron seis máquinas o artefactos operados mediante fichas o monedas.

6. *En el segundo local los agentes observaron quince máquinas o artefactos operados mediante fichas o monedas.*

7. Según el testimonio presentado, *el certificado de registro de comerciante tampoco se encontraba exhibido en un lugar visible al público al momento de la inspección.*

8. *El Querellante no contaba con una licencia requerida en todo negocio, establecimiento o local donde operen cuatro (4) o más máquinas o artefactos de pasatiempo manipulados con monedas o fichas.*[10]

(Énfasis nuestro).

A base de estas, la OAADH declaró parcialmente con lugar la querella presentada por el recurrente. En consecuencia, sostuvo las multas impuestas en virtud de las Secciones 3050.03 y 6043.01(a), pero dejó sin efecto aquella impuesta al amparo de la Sección 6041.03(d), todas del Código de Rentas Internas. En lo pertinente, el Foro Recurrido razonó que la reglamentación de la Comisión de Juegos sobre las máquinas de juegos de azar en ruta no desplaza las facultades del Departamento de Hacienda sobre el licenciamiento y la fiscalización contributiva del establecimiento, ya que estas son dos (2) esferas regulatorias independientes entre sí.

Inconforme, el 15 de abril de 2026, PJR LLC compareció ante nos mediante un recurso de revisión administrativa, y formuló los siguientes señalamientos de error:

---

[10] SUMAC TA, entrada núm. 1, apéndice 7, pág. 2.

**PRIMER ERROR:** Erró la Oficina de Apelaciones Administrativas del Departamento de Hacienda al concluir que ostenta jurisdicción para atender un asunto que le compete a la Comisión de Juegos del Gobierno de Puerto Rico.

**SEGUNDO ERROR:** Erró la Oficina de Apelaciones Administrativas del Departamento de Hacienda al concluir que procede la imposición de una multa por licencia de espacio, a pesar de la existencia de una ley especial que dispone lo contrario.

Tras habérsele concedido una prórroga, el 11 de mayo de 2026, el Negociado compareció ante nos mediante su *Escrito en Cumplimiento de Orden.*

Perfeccionado el recurso, procedemos a resolver.

## II.

### A. Revisión Administrativa

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Tricoche Matos y otro v. Luis Freire*, 2025 TSPR 92, 216 DPR ___ (2025); *Vázquez et al v. DACo,* 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalaqcua v. Quirós, Betances,* 214 DPR 370, 377 (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008). De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". *Id.*

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal".

*Simpson, Passalaqcua v. Quirós, Betances*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753; *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *J.H.V. v. Negociado de la Policía*, 2025 TSPR 139, 216 DPR ___ (2025); *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677.

Ahora bien, es harto conocido en nuestro ordenamiento jurídico, que los tribunales deben brindarles la mayor deferencia posible a las decisiones administrativas, por gozar estas de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *J.H.V. v. Negociado de la Policía,* supra, *Katiria's Café, Inc. vs. Mun. San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Transp. Sonell, v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero deben examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa. *Vur-Jer v. Junta Reglamentadora*, 2026 TSPR 46, 218 DPR ___ (2026); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754; *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una presunción de

regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. *J.H.V. v. Negociado de la Policía*, supra; *Transp. Sonell v. Jta. Subastas ACT*, supra; *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra, pág. 754; *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otro*, supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 126; *Rolón Martínez v. Supte. Policía*, supra, pág. 35.

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAUG, *supra*, establece que serán sostenidas si están basadas en evidencia sustancial contenida en el expediente administrativo. LPAUG, *supra*, sec. 9675; *J.H.V. v. Negociado de la Policía,* supra. Así, la parte que impugna las determinaciones de hechos de una agencia tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, supra, págs. 88-89; *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 128; *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

Por su parte, la LPAUG, *supra*, sec. 9675 dispone que "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". *Vur-Jer v. Junta Reglamentadora*, supra; *J.H.V. v. Negociado de la Policía,* supra; *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Esta máxima está impregnada en la fábrica del derecho anglosajón, que en virtud de nuestra fusión jurídica con los Estados Unidos de América nos aplica, desde el famoso caso *Marbury v. Madison*, 5 US 137 (1803), en el que se estableció que

"determinar cuál es el derecho es, categóricamente, el ámbito y el deber del poder judicial".

A esos efectos, nuestro Tribunal Supremo aclaró recientemente que, a través de la precitada disposición en la LPAUG, *supra*, el legislador eliminó la deferencia judicial sobre las determinaciones de derecho que realicen las agencias administrativas. *Vázquez et al. v. DACo,* supra. Lo cierto es que "la interpretación de la Ley es una tarea que corresponde inherentemente a los tribunales". *Freyre Martínez v. Consejo de Titulares*, 2026 TSPR 20, 217 DPR ___ (2026); *Vázquez et al. v. DACo,* supra.

Así, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la Agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021).

### B. Departamento de Hacienda

El Plan de Reorganización Núm. 3 de 22 de junio de 1994, conocido como el *Plan de Reorganización del Departamento de Hacienda,* 3 LPRA Ap. VII, sec. I *et seq,* establece que el Departamento de Hacienda es la entidad gubernamental *encargada de administrar la política pública de nuestro País relacionada a los asuntos contributivos y financieros.* 3 LPRA Ap. VII, sec. I nota. (Énfasis nuestro). A tales fines, se le han reconocido todas las funciones y responsabilidades que le son encomendadas a través de las leyes especiales relativas a los sistemas de administración fiscal y contributivo. 3 LPRA Ap. VII, sec. I.

Entre las leyes que administra el Departamento de Hacienda, se encuentra el *Código de Rentas Internas de Puerto Rico de 2011,* Ley Núm. 1 de 31 de enero de 2011, según enmendado, 31 LPRA sec. 30011 *et seq.* En lo pertinente, el Código de Rentas Internas le

concedió al Departamento de Hacienda la facultad de imponer de ciertos requisitos y condiciones para la operación de determinadas actividades comerciales, entre ellas, el cobro de impuestos por concepto de los derechos de licencia para determinados negocios o actividades. En particular, la Sección 3050.02 del Código de Rentas Internas dispone lo siguiente en cuanto a los derechos de licencia para máquinas operadas por monedas:

(a) Cualquier persona que opere máquinas o artefactos de pasatiempo manipulados con monedas, tarjetas, fichas o artefactos similares, o mesas de billar, deberá pagar un impuesto anual por concepto de derechos de licencia por la cantidad que se establece a continuación:

[….]

(4) A partir del 1 de enero de 2019 el Secretario cobrará el siguiente impuesto anual por concepto de licencia:

(A) Por cada vellonera y mesa de billar.     $300

(B) Por cada máquina o artefacto de pasatiempo manipulado con monedas, tarjetas, fichas o artefactos similares de tipo mecánico, electrónico, o de video que (i) no contengan material de violencia o de índole sexual y que pueda ser utilizada por toda persona, incluyendo menores de edad, y (ii) cuando las habilidades o destrezas del jugador afectan significativamente el resultado final de la partida.     $100

(C) Por cada máquina o por cada pantalla de máquina de entretenimiento de adultos según definidos en esta Sección.     $3,000

(D) Por cada pantalla de máquinas de juegos electrónicos manipulados con monedas o fichas, cuando las habilidades o destrezas del jugador afectan significativamente el resultado final de la partida, que no estén incluidos en los incisos anteriores, y que no contienen los mecanismos o

dispositivos característicos de las máquinas de juegos de azar, según definidas en esta Sección.                                      $1,500

[....]

(b) Los derechos de licencia antes establecidos se aplicarán *separadamente para cada máquina o artefacto de pasatiempo manipulado con monedas, tarjetas, fichas o artefactos similares*, y por cada mesa de billar que se importe o distribuya. La licencia deberá exhibirse de modo visible al público en cada máquina o artefacto a que corresponda la misma. Dicha licencia tendrá que ser fijada en la parte superior izquierda de toda pantalla o máquina de juego electrónico o artefacto de pasatiempo manipulado por moneda a que corresponda, o en un lugar visible si se trata de una mesa de billar.[....].

[....]

13 LPRA sec. 31712(a)(1), (4), (b).[11] (Énfasis nuestro).

Ahora bien, con relación a los derechos de licencia relacionados a los negocios donde se operan las máquinas de pasatiempos a las cuales se refiere la Sección anterior, la Sección 3050.03 del Código de Rentas Internas dispone que:

Toda persona *que opere un negocio, establecimiento o local donde operen cuatro (4) o más máquinas o artefactos de pasatiempo manipulados con monedas o ficha*, o mesas de billar, deberá pagar un impuesto anual *por concepto de derechos de licencia por cada negocio, establecimiento o local*, por la cantidad de doscientos (200) dólares. La licencia deberá exhibirse en un lugar visible al público en general en el establecimiento, negocio o local para el cual se conceda la

---

[11] Esta disposición incluye ciertas definiciones con relación a la clasificación de las máquinas aludidas en dicho Subcapítulo del Código de Rentas Internas, a saber:

(A) "Máquinas de entretenimiento de adultos" se refiere a las máquinas que no contengan los mecanismos o dispositivos característicos de las Máquinas de Juego de Azar y las máquinas de video y juego electrónico manipulado con monedas, tarjetas, fichas o artefactos similares que contengan material de violencia o de índole sexual o de contenido para mayores de 18 años cuando las habilidades o destrezas del jugador afectan significativamente el resultado final de la partida, y no contienen los mecanismos o dispositivos característicos de las máquinas de juegos de azar, según definidas en esta Ley y en la Ley Núm. 11 de 22 de agosto de 1933, según enmendada.

(B) "Máquinas de Juego de Azar" se refiere a las máquinas que usan un elemento de azar para pagar premios, establecidos en esta Ley y en la Sección 3 de la Ley Núm. 11 de 22 de Agosto de 1933, según enmendada, conocida como "Ley de Máquinas de Juegos de Azar". *Véase,* 13 LPRA sec. 31712(1)(A)-(B).

misma. Las exclusiones a que se refiere el apartado (d) de la Sección 3050.02 de este Subtítulo también aplicarán a los derechos de licencia que se establecen en esta sección.

13 LPRA sec. 31713 (Énfasis nuestro).

Por otro lado, el Código de Rentas Internas establece que toda persona que desee realizar negocios en Puerto Rico como comerciante debe solicitar y obtener del Secretario del Departamento de Hacienda un Certificado de Registro de Comerciante para cada local comercial que desee operar. 13 LPRA sec. 32141(a). Una vez el documento aludido es expedido, el comerciante registrado *tiene que cumplir con su obligación de exhibirlo públicamente* en conformidad con la Sección 4060.02 del Código de Rentas Internas el cual dispone que:

El Certificado de Registro *deberá exhibirse en todo momento en un lugar visible al público en general* en cada lugar de negocio para el cual sea expedido. Ninguna persona hará negocios como comerciante, ni persona alguna venderá o recibirá nada de valor en lugar de admisiones, sin antes obtener un certificado o después de que dicho certificado haya sido cancelado; y ninguna persona recibirá licencia alguna de cualquier entidad del Gobierno de Puerto Rico para llevar a cabo dichos negocios sin antes obtener un certificado o después de que dicho certificado haya sido cancelado.

13 LPRA sec. 32141. (Énfasis nuestro).

La consecuencia del incumplimiento con la precitada disposición se encuentra contemplada en la Sección 6043.01(a) del Código de Rentas Internas, *supra*, sec. 33161, la cual dispone que "[t]odo comerciante que viole las disposiciones de la Sección 4060.02, estará sujeto a una multa administrativa de hasta mil (1,000) dólares".

De igual manera, el Departamento de Hacienda tiene facultad para imponer una multa administrativa que no excederá de quinientos dólares ($500.00) por cada violación a cualquier Subtítulo de Código de Rentas Internas, siempre que no se haya

dispuesto específicamente de otra manera en el mismo. 13 LPRA sec. 33091(a)-(b).

### B. Comisión de Juegos de Puerto Rico

La *Ley de la Comisión de Juegos del Gobierno de Puerto Rico*, Ley Núm. 81 de 29 de julio de 2019, 15 LPRA sec. 981 *et seq*, en adelante, Ley Núm. 81, creó la Comisión de Juegos para que esta dirija y fiscalice todo asunto relevante a las apuestas autorizadas por Ley, sobre las cuales se le otorgó jurisdicción. 15 LPRA secs. 982-982a. Además, dicha agencia quedó facultada para promulgar regulaciones estrictas sobre "las licencias, jugadas, mecanismos para realizar las jugadas, eventos autorizados, los individuos, lugares, prácticas, asociaciones y todas las actividades relacionadas a esta industria". 15 LPRA sec. 982a. En lo que respecta al licenciamiento, esta Ley le impone a la Comisión el deber de aplicar la normativa relacionada a dicha industria con el fin de asegurar la recaudación adecuada de los impuestos y los cargos por licencia. *Íd.*

En lo pertinente, la Ley Núm. 81 introdujo ciertas enmiendas a la *Ley de Máquinas de Juegos de Azar*, Ley Núm. 11 de 22 de agosto de 1933, 15 LPRA sec. 82 *et seq.*, en adelante, Ley Núm. 11, con el fin de atemperar la misma a los varios cambios estatutarios sobre dicha industria en los pasados años. A su vez, la Comisión de Juegos quedó designada mediante la Ley Núm. 81 como la agencia con poder para ejercer las facultades delegadas en la Ley Núm. 11. 15 LPRA sec. 982a(23).

Por ser relevante al caso de marras, señalaremos varias disposiciones de la Ley Núm. 11, que han sido objeto de un cauteloso y riguroso estudio por este Foro.

Conviene aclarar que la Ley Núm. 11 reglamenta el uso de máquinas de juego electrónico de entretenimiento de adultos, así como todo lo relacionado a las máquinas de juegos de azar o

"tragamonedas", según definidas en dicho estatuto.[12] 15 LPRA secs. 83, 84c. Esta Ley faculta a la Comisión de Juegos "a reglamentar y fiscalizar todo lo relacionado a la introducción, distribución, adquisición, venta, arrendamiento, transportación, ubicación, colocación, funcionamiento, mantenimiento, operación, uso, custodia y posesión de las máquinas" antes mencionadas. 15 LPRA sec. 83, 84b, 84m.

De conformidad con la Sección 3 de la Ley Núm. 11, la Comisión de Juegos quedó autorizada a "emitir licencias *para cada máquina de entretenimiento* cuyo uso se autorice en la jurisdicción del Gobierno de Puerto Rico", las cuales deberán cancelar un comprobante de Rentas Internas por la cuantía establecida en la Sección 3050.02 del Código de Rentas Internas, y adherirse visiblemente a cada máquina mientras esta se encuentre en operación. 15 LPRA sec. 83. (Énfasis nuestro).

Igualmente, en la Sección 9 de la Ley Núm. 11, 15 LPRA sec. 84e, se dispuso que la Comisión de Juegos podrá expedir licencias *para la operación de máquinas de juegos de azar*, si determina, a base de toda la información disponible, que el solicitante satisface los criterios de concesión de licencia establecidos mediante Reglamento. (Énfasis nuestro). En su Sección anterior, dicho estatuto prohibió la operación de máquinas sin la licencia y el marbete debidamente emitidos por la Comisión. 15 LPRA sec. 84d

Con respecto al pago de derechos por las licencias autorizadas por la Ley Núm. 11, su Sección 11 dispone lo siguiente:

> El costo de los derechos por cada licencia o renovación de licencia de Máquinas de Juegos de Azar tendrá un cargo de cuatrocientos dólares ($400) anuales pagaderos a la Comisión de Juegos para la implementación de esta Ley, una vez el Dueño Mayorista tenga sus máquinas conectadas al Sistema de Interconexión Interno. De cada licencia pagada,

---

[12] *Véase,* 15 LPRA sec. 82(17)-(18).

la Comisión, retendrá cien dólares ($100) para sus gastos operacionales; doscientos cincuenta dólares ($250) serán destinados para el Fondo General; y cincuenta dólares ($50) serán destinados a mejorar la compensación de Retiro de la Policía de Puerto Rico. Estos serán remitidos por la Comisión al Secretario de Hacienda, quien será responsable de que dicho dinero se deposite en el fideicomiso correspondiente para los fines que establece esta Ley. [….]. El cargo por licencia incluirá el costo del marbete. Ningún dueño u operador, ya sea individuo, entidad o corporación podrá poseer los derechos de menos de cincuenta (50) máquinas de juegos de azar ni más de doscientas cincuenta (250), por grupo de entidades relacionadas, según definido en la Sección 1010.05 de la Ley 1-2011, según enmendada, conocida como "Código de Rentas Internas para un Nuevo Puerto Rico", y, en caso de individuos, por todas sus actividades de industria o negocio. Nadie podrá adquirir licencias para Máquinas de Juegos de Azar sin previamente haber solicitado y le haya sido concedida una licencia de Dueño Mayorista.

[….]

El cargo por licencia de Dueño Mayorista de máquinas de juegos de azar será por la cantidad de quinientos (500) dólares pagaderos a favor de la Comisión de Juegos. Este cargo no será rembolsable, independientemente de si se autoriza o no la licencia.

Todo Dueño de Negocio que pretenda instalar o colocar máquinas de juegos de azar en sus facilidades deberá solicitar una licencia de Dueño de Negocio en la Comisión. La licencia será libre de costo por cada máquina localizada en el Negocio. La Comisión proveerá al Dueño de Negocio una Licencia para exhibir en un lugar visible dentro del Negocio, que, entre otra información, indique el nombre del Negocio, la dirección física y postal y la cantidad de máquinas autorizadas para operar en el mismo.

[…]

Bajo ningún concepto se autoriza el cobro de cargos o aranceles adicionales a los dispuestos por esta Ley. Por lo cual, se dispone que la adquisición de los Equipos y Máquinas de Juegos de Azar en Ruta estará exenta del pago del Impuesto de Ventas y Uso (IVU); impuesto de propiedad mueble del Centro de Recaudación de Ingresos Municipales

(CRIM) y el pago por espacio cobrado por la Oficina de Gerencia de Permisos u otra agencia gubernamental.

15 LPRA 84g.

**III.**

Los *dos (2) errores* expuestos por el recurrente revelan que su contención principal es que la OAADH se equivocó al confirmar las multas administrativas que le fueron impuestas por el Negociado, toda vez que estas surgen por presuntos incumplimientos con el licenciamiento de un local en el cual opera máquinas de juegos de azar, cuyos asuntos solo pueden ser fiscalizados por la Comisión de Juegos.

En particular, PJR LLC alega que la Ley Núm. 81 desplazó las facultades regulatorias que tenía el Departamento de Hacienda sobre la industria de máquinas de juegos de azar, y le otorgó a la Comisión de Juegos la jurisdicción exclusiva sobre todo asunto relacionado a estas. Insiste que, al operar un negocio donde posee varias máquinas de juegos de azar, el Departamento de Hacienda no tiene autoridad para imponer cargos o aranceles adicionales a los que establece la Ley Núm. 81, como el cobro por derechos de licencias a negocios dispuesto en la Sección 3050.03 del Código de Rentas Internas. Por tanto, arguye que el Foro Recurrido carecía de jurisdicción para confirmar las multas impuestas al amparo del Código de Rentas Internas. *No le asiste la razón.*

Cual citado, el Departamento de Hacienda es la agencia encargada de la administración fiscal y contributiva en nuestro País. En el ejercicio de tal responsabilidad, dicho ente tiene facultad para cobrar impuestos por conceptos de licencias para la operación de negocios que lleven a cabo determinadas actividades comerciales. En particular, este tiene autoridad para cobrar un impuesto por concepto de licencias dirigidas a un establecimiento, local o negocio

que opere una cantidad determinada de máquinas de entretenimiento operadas por fichas o monedas.

Por otro lado, la Comisión de Juegos recientemente se convirtió en la agencia con jurisdicción exclusiva para fiscalizar todo asunto relacionado con las máquinas de entretenimiento para adultos y las máquinas de juegos de azar. Entre estos, se encuentra la facultad de emitir licencias para el uso y operación de tales máquinas, así como el recaudo de impuestos por tal concepto.

En este punto, conviene recordar uno de los máximos principios de hermenéutica de nuestro ordenamiento jurídico, el cual dispone que "cuando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu".[13] Es decir, ante un estatuto que carece de opacidad textual, este debe interpretarse en el sentido literal de sus palabras.[14] Ante ello, no hallamos criterio alguno que nos mueva a concluir que la disposición del Código de Rentas Internas impugnada por el recurrente contenga la interpretación jurídica que pretende conferirle.

En este caso, a pesar de que el recurrente interpreta que los derechos por licencia dispuestos en la Sección 3050.03 del Código de Rentas Internas trata sobre la "licencia por espacio" que prohíbe la Sección 11 de la Ley Núm. 11, una lectura íntegra a ambas disposiciones demuestra que estas tratan de regulaciones totalmente distintas y no relacionadas al uso del espacio.

Por un lado, la Sección 11 de la Ley Núm. 11 expresamente persigue el cobro de derechos por licencias dirigidas específicamente a la *posesión, instalación, uso y operación de las máquinas de juegos de azar*. En cuanto a la prohibición de cobro por aranceles

---

[13] Art. 14 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 5337.
[14] Véase, *Cabrera Rodríguez y otros v. Integrand*, 2025 TSPR 127, 217 DPR ___ (2025); *JJJ Adventure v. Consejo de Titulares y otros*, 2025 TSPR 123, 216 DPR ___ (2025); *Buxó Santiago v. ELA et als.*, 2024 TSPR 130, 215 DPR ___ (2024).

adicionales que esta establece, apreciamos que esta va dirigida a los que otras agencias gubernamentales pretendan cobrar por concepto de las máquinas reguladas por dicha Ley. Esto incluye, entonces, el cobro por espacio que exige la Oficina de Gerencia de Permisos, que nada tiene que ver con la operación del local donde estas se encuentren.

En contraste, la Sección 3050.03 del Código de Rentas Internas claramente exige el pago de derechos por licencias de operación sobre *el negocio, establecimiento o local* en el que se encuentran funcionando al menos cuatro (4) máquinas de pasatiempo operadas por fichas o monedas, sin especificar la naturaleza de la máquina en sí.

En otras palabras, esta última disposición no toma en consideración la naturaleza del juego de la máquina que opera en el establecimiento, sino que el criterio es que esta funcione a base de monedas o fichas análogas, y que haya más de tres (3) presentes en el establecimiento comercial. Esto, pues, tal Sección no persigue regular la operación de un tipo específico de máquinas —en este caso, las máquinas de juegos de azar, previamente reguladas por la Sección 3050.02 del Código de Rentas Internas,[15] y ahora por la Ley Núm. 11— sino que busca fiscalizar la operación del establecimiento en las que estas se encuentran en funcionamiento.

Además, la interpretación propuesta por el recurrente no es sostenible, en la medida que esta implicaría la privación de las facultades fiscales y contributivas que ostenta el Departamento de Hacienda sobre el resto de las actividades comerciales que se lleven a cabo en el Local 126, por el solo hecho de que las máquinas allí operadas sean de juegos de azar. Después de todo, la presencia de

---

[15] Conforme al derecho previamente expuesto, la Ley Núm. 81, en efecto, desplaza las facultades de licenciamiento que ostentaba el Departamento de Hacienda *sobre las máquinas electrónicas de entretenimiento para adultos y sobre las máquinas de juegos de azar,* las cuales emanaban de esta sección del Código de Rentas Internas.

las referidas máquinas no desvirtúa la responsabilidad contributiva que le impone el Código de Rentas Internas al recurrente sobre la operación comercial de su establecimiento.

Esto cobra mayor relevancia al considerar que, por mandato de la propia Ley Núm. 11, es indispensable que un negocio lleve a cabo otras actividades comerciales que generen un mayor ingreso pecuniario al que generan las máquinas de juegos de azar, sobre las cuales el Departamento de Hacienda retiene facultades fiscales y regulatorias.[16]

Por tanto, colegimos que ambas agencias *son entidades gubernamentales completamente independientes*, cuya jurisdicción reguladora comprende ámbitos diferentes: la Comisión de Juegos reglamenta y fiscaliza el licenciamiento y la operación de las máquinas de juegos de azar, mientras que el Departamento de Hacienda fiscaliza el licenciamiento y la responsabilidad contributiva del local en el que se hallen una cantidad determinada de máquinas de pasatiempo cuya operación dependa por fichas o monedas. Esta última, indistintamente del tipo de juegos o pasatiempo que se exhiban en las máquinas aludidas.

En consecuencia, concluimos que actuó correctamente la OAADH al distinguir la aplicación de cada estatuto para identificar la presencia de dos (2) esferas regulatorias independientes entre sí, las cuales pueden coexistir en la regulación de ciertas actividades comerciales, como aquella en la que participa el recurrente; ello, sin desplazar las facultades fiscalizadoras particulares de cada una de las entidades gubernamentales. Por tanto, dicho foro administrativo tenía jurisdicción para atender la procedencia de las multas administrativas impugnadas por PJR LLC.

---

[16] *Véase*, 15 LPRA sec. 84q.

Superada la controversia interpretativa planteada por el recurrente, apreciamos que *le asiste la razón al recurrido* cuando señala que el recurrente, más allá de argumentar la improcedencia estatutaria de las multas administrativas, no cuestiona las determinaciones de hechos realizadas por el Foro Recurrido en la *Resolución* recurrida.

PJR LLC no niega la presencia de las quince (15) máquinas operadas por fichas o monedas observadas por los agentes del Negociado en el Local 126, ni presentó prueba que nos pusiera en posición de determinar que este contaba con la licencia requerida para operar dicho local en presencia de más de tres (3) máquinas de las antes mencionadas. Tampoco obra en el expediente evidencia alguna que demostrara que este contaba con su certificado de registro de comerciante en un lugar visible al público al momento de la inspección que generó las multas impugnadas.

Cónsono con lo anterior, colegimos que el Foro Recurrido actuó correctamente al sostener la imposición de las multas administrativas al amparo de las Secciones 3050.02 y 6043.01(a) del Código de Rentas Internas. Por tanto, la OAADH *no incurrió en los errores señalados*.

No observamos que el Foro Recurrido haya incurrido en abuso de discreción o haya actuado arbitraria o caprichosamente al emitir su dictamen. Por consiguiente, no estamos en posición de interferir con las determinaciones de la OAADH. Procede, pues, que le concedamos total deferencia y que se confirme el dictamen recurrido.

## IV.

Por los fundamentos antes expuestos, *confirmamos el dictamen recurrido en su totalidad.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones